**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **AT&T SEVERANCE PAY PLAN, by and through AT&T SERVICES, INC., its Plan Administrator,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ALEXIS COOK-SIMMS,**<br><br>    **Defendant.** | Case No.  3:25-cv-3258 |

## COMPLAINT

The AT&T Severance Pay Plan ("Plaintiff" or the "Plan"), by and through its plan administrator, AT&T Services, Inc. ("AT&T Services" or "Plan Administrator"), hereby brings these claims for relief against Alexis Cook-Simms ("Defendant" or "Cook-Simms") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      The Plan Administrator, on behalf of the Plan, brings these claims for relief to enforce the terms of the Plan and enjoin conduct by Cook-Simms which violates the terms of the Plan. Specifically, as required by the terms of the Plan, on June 20, 2024, Cook-Simms acknowledged and entered into a General Release and Waiver (the "GRW") with her employer, AT&T Services, to be eligible for severance benefits under the Plan including a severance allowance cash payment of $59,327.00 (the "Severance Allowance"). After acknowledging the GRW and receiving the Severance Allowance cash payment under the Plan, Cook-Simms then violated the terms of the GRW and the Plan by filing an arbitration against her now-former employer asserting the very claims she waived and released under the GRW to be eligible for benefits under the Plan.

1

2.      The Plan is a self-funded employee benefit plan sponsored by AT&T Inc.

3.      AT&T Services, Inc. is the Plan Administrator and named fiduciary for the Plan, as set forth in Section 3.1 of the Plan Document and Summary Plan Description, a true and correct copy of which is attached as Exhibit 1 (hereinafter the "Plan Document").

4.      Cook-Simms is an individual residing in Dallas, Texas. Cook-Simms may be served with process at 3021 Saint George Drive, Mansfield, Texas 76063. Cook-Simms may otherwise be served with process wherever she may be found.

5.      Cook-Simms was a participant in the Plan.

6.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this is an action brought pursuant to Section 502(a)(3), 29 U.S.C. § 1132(a)(3), of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Under Section 502(f) of ERISA, 29 U.S.C. § 1132(f), this Court has subject matter jurisdiction without respect to the amount in controversy or the citizenship of the parties.

7.      Venue exists in this district under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and under 28 U.S.C. § 1391(b)(2), because Defendant's breach and a substantial part of the events or omissions giving rise to the claim occurred in Dallas County.

### FACTUAL ALLEGATIONS

8.      Cook-Simms is a former full-time, active, non-bargained employee of AT&T Services, Inc., a "Participating Company" in the Plan as that term is used and defined in the Plan Document. (Ex. 1 at 17, Article VI.)

9.      On May 28, 2024, AT&T Services sent Cook-Simms a Surplus Notification Letter ("SNL") informing her of the elimination of her position as part of a reduction in workforce, that

she was being placed in a "surplus" status effective May 29, 2024 (the day after the date of the SNL), and that her employment would end June 11, 2024.

10.    The SNL also informed Cook-Simms she could receive severance benefits from the Plan if she met the Plan's eligibility criteria.

11.    The Plan Document's terms define eligibility for benefits under the Plan; one of those requirements is that the individual must have "properly executed a Participating Company-approved General Release and Waiver of all rights and claims relating to the employee's employment and termination…." (Ex. 1 at 3, § 1.3.F.)

12.    As specified in the express terms of the Plan Document, "properly execut[ing] a Participating Company-approved General Release and Waiver of all rights and claims relating to the employee's employment and termination…." was a condition precedent to eligibility for and receipt of severance benefits from the Plan. (*Id.*) Accordingly, the executed GRW of all rights and claims relating to the employee's employment and termination, which is one of the requirements for to be an Eligible Employee under the Plan, is part of the Plan's terms.

13.    The SNL was clear: for Cook-Simms to receive severance benefits under the Plan, she had to acknowledge and agree to the GRW.

14.    The SNL stated that Cook-Simms could communicate her acknowledgment of and agreement to the GRW in one of two ways: either by (1) providing the acknowledgment electronically through the Surplus Transition Portal website ("STP"); or (2) returning a manual acknowledgement to AT&T Services' Surplus Support Team. It informed Cook-Simms that she could not acknowledge the GRW until her last date on payroll or after.

15.    The SNL also identified the resources available to Cook-Simms (including an overview of the surplus process and documents) and how to access to them through the STP,

3

specifically noting that "[i]n light of their importance, you should access the Surplus Transition Portal resources as soon as possible."

16. The STP activity log shows that on June 3, 2024, Cook-Simms accessed the STP and emailed the SNL, GRW, and the Severance Pay Computation (presumably to herself for her records) and provided her personal email address and her personal home and cell phone numbers to the STP. The STP activity log shows that Cook-Simms also accessed the Severance Plan Website and various other company resources on June 3, 2024. The STP activity log is attached hereto as Exhibit 2.

17. Cook-Simms' employment ended June 11, 2024.

18. The STP activity log shows that on June 19, 2024, Cook-Simms accessed the GRW again, and opened, printed, and saved the GRW. The GRW is attached hereto as Exhibit 3.

19. The STP activity log shows that on June 20, 2024, Cook-Simms acknowledged the GRW. (Ex. 2.)

20. The GRW, which Cook-Simms electronically acknowledged and agreed to through STP, provides that:

> I elect to receive the Plan benefits specified under Section III of this General Release and Waiver and understand that the Plan benefits are being paid in consideration for terminating my employment with the Participating Company and my release and waiver of claims as set forth below. I understand that I am not entitled to receive the Plan benefits unless I accept, and do not revoke, this General Release and Waiver.
> (Ex. 3 at § IV.)

21. Pursuant to the terms of the Plan and the GRW that Cook-Simms acknowledged and agreed to, on July 5, 2024, the Plan paid Cook-Simms a Severance Allowance (defined by the Plan Document as "the cash payment made to an Eligible Employee under the terms of this Plan," Ex. 1 at § 1.4) in the form of a $59,327.00 cash payment.

4

22. The GRW that Cook-Simms electronically acknowledged and agreed to through the STP, further provides, in part:

> In exchange for the Plan benefits described under Section III of this General Release and Waiver, I hereby release the Plan, AT&T Inc. and the Participating Company, and their current and former parents, subsidiaries, affiliates, predecessors, successors or assigns (collectively, the "Companies"), and the Companies' current and former officers, directors, employee benefit plans, employees and related parties (collectively, the Released Parties) from any and all claims, liabilities, damages, demands or causes of action which I, my heirs, executors, administrators, agents, attorneys, representatives or assigns, have, had or may have against the Released Parties, based on any events or circumstances arising or occurring prior to and including the date of my execution of this General Release and Waiver, whether known or unknown, including but not limited to claims based on my employment with the Companies or the termination of that employment, except for any vested pension or savings benefits under the terms of any employee benefit plan other than the AT&T Inc. Severance Pay Plan and except claims for commission(s) on sales made during the current Sales Compensation Plan year or claims for commission(s) on sales made during the Sales Compensation Plan year immediately prior to the current Sales Compensation Plan year.

(Ex. 3 at § IV.1.)

23. On July 7, 2025, Cook-Simms filed a Demand for Arbitration against AT&T Services with JAMS f/k/a Judicial Arbitration and Mediation Services, Inc., styled *Alexis Cook-Simms v. AT&T Services, Inc.*, JAMS Ref. No. 5310001506 (the "Action"), in which she alleges employment discrimination claims under 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Texas Commission on Human Rights Act ("TCHRA"), and the Americans With Disabilities Act ("ADA"), and violations of the Family Medical Leave Act ("FMLA").

24. Through the GRW acknowledged by Cook-Simms, which was required for Cook-Simms to be an Eligible Employee under the Plan and receive the Severance Allowance from the Plan, Cook-Simms released all rights and claims relating to her employment and termination, including the very claims she asserted in the Action:

**I expressly understand and agree that this is a General Release that, to the fullest extent permitted by law, waives, surrenders, and extinguishes all claims that I have or may have against the Released Parties**, including but not limited to claims under **Title VII of the Civil Rights Act of 1964 (Title VII)**, the Civil Rights Act of 1991, the Age Discrimination in Employment Act (ADEA), the **Americans with Disabilities Act (ADA)**, the **Family and Medical Leave Act (FMLA)**, the Worker Adjustment and Retraining Notification (WARN) Act, or the Employee Retirement Income Security Act (ERISA), **or any other federal, state or local laws, or any other claim for damages or other relief arising under any theory of law or equity**, including any claim for costs or attorney's fees…."

(Ex. 3 at § IV.1 (emphases added).)

25. The Plan Document's terms provide that "[i]f any overpayment is made by the Plan for any reason, the Plan shall have the right to recover such overpayment," and that "[t]he participant shall cooperate fully with the Plan and return the gross amount of any overpayment." (Ex. 1 at 14, § 5.4.)

26. By filing the Action and asserting claims related to her employment with AT&T Services, Cook-Simms has violated the terms of the Plan which make agreement to the GRW and waiver of all rights and claims relating to the employee's employment and termination a requirement for eligibility for benefits under the Plan, including the $59,327.00 Severance Allowance that Cook-Simms received and still retains.

27. Cook-Simms' retention of the $59,327.00 Severance Allowance paid by the Plan in reliance on her agreement to the GRW and waiver of all rights and claims relating to her employment and termination is inequitable, inappropriate, and unfair, and constitutes a breach of the Plan and the GRW.

28. Prior to filing this lawsuit, counsel for the Plan Administrator sent correspondence on August 25, 2025, and September 19, 2025, to Cook-Simms's then counsel in the Action, Alfonso Kennard, Jr., explaining that Cook-Simms violated the terms of the Plan by agreeing to the GRW and waiving all rights and claims relating to her employment and termination, accepting

the cash payment of the Severance Allowance from the Plan, but then filing the Action to assert claims related to her former employment with AT&T Services. Both communications requested that Cook-Simms acknowledge she had waived her right to bring the Action, requesting that she voluntarily dismiss the Action and advising her of AT&T Services' intent to bring this suit, seeking recovery of the Severance Allowance and its attorneys' fees from Cook-Simms.

29.    Counsel for Plan Administrator was later advised that, as of September 12, 2025, Mr. Kennard retired from the practice of law and no longer represented Cook-Simms. Then on November 10, 2025, after Cook-Simms confirmed she would proceed with the Action pro se, the undersigned counsel sent the same correspondence to Cook-Simms, again advising her she violated the terms of the Plan and waived her right to bring the Action, asking her to voluntarily dismiss the Action, and notifying her of AT&T's plans to bring this suit.

30.    Cook-Simms responded via email on November 15, 2025, refusing to dismiss the Action and generally reasserting the allegations she asserted in her demand for arbitration filed in the Action.

**COUNT I**
**INJUNCTIVE RELIEF TO STOP A VIOLATION OF THE TERMS**
**OF THE PLAN AND ENFORCE THE TERMS OF**
**THE PLAN PURSUANT TO SECTION 502(A)(3) OF ERISA**

31.    Paragraphs 1 through 30 above are incorporated by reference as if fully restated herein.

32.    Cook-Simms' acceptance of the Severance Allowance cash payment of $59,327.00 under the terms of the Plan but subsequent filing of the Action against her former employer asserting claims related to her employment and termination (despite acknowledging and agreeing to the GRW in which she expressly waived, released and forever discharged her employer from such claims) violates the terms of the Plan.

33.     By bringing the claims in the Action, Cook-Simms has violated and continues to violate the terms of the Plan as set forth in the Plan Document and the GRW, and has expressly repudiated obligations and duties under the terms of the Plan.

34.     To redress Cook-Simms' violation of the terms of the Plan, and to ensure that the terms of the Plan are properly enforced, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), the Plan, through the Plan Administrator, seeks an order dismissing with prejudice, or requiring Cook-Simms to dismiss with prejudice, her claims as brought in the Action against her former employer AT&T Services, and enjoining Cook-Simms from pursuing her claims in the Action against her former employer AT&T Services or any of the other released parties as specified in the GRW; or, alternatively, the Plan, through the Plan Administrator, seeks an order finding that Cook-Simms is barred from any recovery for the claims asserted in the Action.

35.     As a direct result of Cook-Simms' failure to adhere to the terms of the Plan by initiating the Action despite waiving and releasing all claims asserted therein, the Plan and the Plan Administrator have suffered costs, expenses, and attorneys' fees.

36.     The Plan and the Plan Administrator are entitled to recover their reasonable attorneys' fees incurred in seeking the above-requested equitable relief from Defendant pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**COUNT II**
**EQUITABLE RESTITUTION PURSUANT TO**
**SECTION 502(A)(3) OF ERISA**

37.     Paragraphs 1 through 36 above are incorporated by reference as if fully restated herein.

38.     Cook-Simms' acceptance of a Severance Allowance cash payment of $59,327.00, paid under the terms of the Plan, but then filing the Action against her former employer asserting

claims related to her employment despite acknowledging and agreeing to the GRW – in which she expressly waived, released and forever discharged her former employer from all such claims – violates the terms of the Plan.

39.     Cook-Simms has been unjustly enriched by her retention of the Severance Allowance paid to her under the Plan and her filing the Action against her former employer in violation of the terms of the GRW, her acknowledgement of which is an express term of the Plan and a condition precedent to her receipt of any severance benefits under the Plan.

40.     As a result of the violation of the terms of the Plan and Cook-Simms' other wrongful conduct, the Plan has been harmed and the Plan, through the Plan Administrator, seeks all appropriate equitable relief, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to redress Cook-Simms' violation of the Plan, including equitable restitution from Cook-Simms of the $59,327.00 Severance Allowance paid to her under the terms of the Plan.

41.     Cook-Simms is in possession of the funds for which equitable restitution is sought, namely, the $59,327.00 Severance Allowance made to her under the terms of the Plan.

42.     The terms of the Plan as set forth in the Plan Document and the GRW are sufficient to enable the Plan to place a constructive trust and/or equitable lien by agreement on the $59,327.00 Severance Allowance made to Cook-Simms under the terms of the Plan and which is in her possession. Specifically, one of the eligibility requirements for benefits under the Plan is that an individual "has properly executed a Participating Company-approved General Release and Waiver of all rights and claims relating to the employee's employment and termination, and delivered it to the designated Participating Company representative" and that "[i]f any overpayment is made by the Plan for any reason, the Plan shall have the right to recover such overpayment," and that

9

"[t]he participant shall cooperate fully with the Plan and return the gross amount of any overpayment." (Ex. 1 at 3, 14, §§ 1.3.F., 5.4.)

43.     As a direct result of Cook-Simms' failure to adhere to the terms of the Plan Document by failing to adhere to the terms of the GRW she acknowledged and agreed to, which is a condition precedent to receipt of benefits under the Plan, the Plan and the Plan Administrator have suffered costs, expenses, and attorneys' fees.

44.     The Plan and the Plan Administrator are entitled to recover their reasonable attorneys' fees incurred in seeking equitable restitution and other appropriate equitable relief from Defendant pursuant to 29 U.S.C. § 1132(g)(1).

**COUNT III**
**DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT**

45.     Paragraphs 1 through 44 above are incorporated by reference as if fully restated herein.

46.     An actual controversy exists between the Plan and Cook-Simms concerning the parties' respective duties and rights under the terms of the Plan as set forth in the Plan Document and the GRW acknowledged by Cook-Simms, which is one of the requirements for Cook-Simms to be an Eligible Employee under the Plan.

47.     Cook-Simms has brought the Action asserting claims regarding her former employment with her employer and the termination of that employment, but Cook-Simms waived and released such claims under the terms of the Plan as set forth in the Plan and the GRW, which is one of the requirements for Cook-Simms to be an Eligible Employee under the Plan.

48.     The Plan, through the Plan Administrator, contends that by bringing the claims in the Action, Cook-Simms has violated and continues to violate the terms of the Plan as set forth in

10

the Plan Document and the GRW, and has expressly repudiated obligations and duties under the terms of the Plan.

49.     The Plan, through the Plan Administrator, seeks a judicial declaration of the Plan's rights, as well as its rights under the terms of the Plan as set forth in the Plan Document and the GRW, which is one of the requirements for Cook-Simms to be an Eligible Employee under the Plan, and the rights of Cook-Simms, including a determination that Cook-Simms is bound by the GRW and an order specifically enforcing the terms of the Plan and requiring Cook-Simms to dismiss with prejudice her claims brought in the Action or, alternatively, an order finding that Cook-Simms is barred from any recovery for the claims asserted in the Action.

50.     Cook-Simms' conduct and breach of the terms of the Plan has and will continue to injure and damage the Plan and the Plan Administrator. As a direct consequence of Cook-Simms' breach, Cook-Simms' former employer has been forced to continue to defend itself against Cook-Simms' improper claims in the Action, has expended costs and fees therefore, and has been denied the benefits of the agreed-to GRW which was a condition precedent to Cook-Simms receiving the Severance Allowance under the Plan.

51.     Such judicial declaration is necessary and appropriate at this time under the circumstances so the parties may determine their respective rights and duties under the Plan and efficiently and expeditiously resolve the dispute to avoid unnecessary and expensive litigation.

WHEREFORE, having stated the above claims against Defendant, Plaintiff respectfully prays as follows:

(a)     that the Court render judgment for the Plan and the Plan Administrator, and against Cook-Simms, on the Complaint and each cause of action therein;

11

(b)    for a declaration that the terms of the Plan as set forth in the Plan Document and the GRW are valid and enforceable against Cook-Simms, and that Cook-Simms has waived and released her claims brought in the Action against her former employer AT&T Services;

(c)    that the Court enter an order dismissing with prejudice, or requiring Cook-Simms to dismiss with prejudice, her claims as brought in the Action against her former employer AT&T Services, or, alternatively, an order finding that Cook-Simms is barred from any recovery for the claims asserted in the Action;

(d)    that the Court impose a constructive trust or equitable lien upon the $59,327.00 Severance Allowance fund in Cook-Simms' possession;

(e)    a declaration of the Plan's ownership of the $59,327.00 Severance Allowance fund in Cook-Simms' possession;

(f)    an order directing Cook-Simms to pay or turn over the $59,327.00 Severance Allowance fund in Cook-Simms' possession, plus accumulated interest, to the Plan;

(g)    that the Plan and Plan Administrator be awarded their costs of suit;

(h)    that the Plan and Plan Administrator be awarded their reasonable attorneys' fees pursuant to Section 502(g)(1) of ERISA and 29 U.S.C. § 1132(g)(1); and

(i)    that the Court award the Plan and Plan Administrator such other and further relief as it deems just and appropriate.

Dated: November 25, 2025                Respectfully submitted,

By: /s/ *Craig A. McDougal*
**Craig A. McDougal**
Texas Bar No. 13569850
cmcdougal@ktslaw.com
**John D. Robinson**
Texas Bar No. 24116977
john.robinson@ktslaw.com

**KILPATRICK TOWNSEND & STOCKTON LLP**
2001 Ross Avenue, Suite 4400
Dallas, Texas  75201
Tel:    (214) 922-7100
Fax:   (214) 922-7101

**ATTORNEYS  FOR  PLAINTIFF**