**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **AT&T SEVERANCE PAY PLAN,**<br>*Plaintiff,* | § <br> § <br> § <br> § | |
| **v.** | § <br> § | **CASE NO. 3:25-cv-03258** |
| **ALEXIS COOK SIMMS,**<br>    *Defendant.* | § <br> § <br> § <br> § | |

**DEFENDANT'S FIRST AMENDED ANSWER TO COMPLAINT
AND COUNTERCLAIMS**

Plaintiff AT&T Severance Pay Plan seeks $59,327 in severance benefits, claiming Defendant breached a General Release and Waiver ("GRW") by filing employment claims. This action should be dismissed because the GRW was procured through fraud. But before addressing the law, the Court should understand what Defendant actually did — and what AT&T is actually asking this Court to punish her for.

The facts are straightforward.

AT&T notified the Defendant that her position was eliminated on May 28, 2024 — the same day she returned from FMLA leave. Defendant had been on protected leave from February 29, 2024, through her return date – May 28, 2024. The Surplus Notification Letter stated: "position eliminated," "reduction in workforce," "business needs."

Performance was not mentioned. Not once. Not as a factor, not as a consideration, not anywhere on the document. It was also not mentioned as a factor in-person during the conversation where this information was delivered. The absence of any performance rationale, in the written notification or the in-person conversation with an HR representative and her VP, combined with the offer of severance, confirmed to Defendant that this was an organizational decision unrelated to her performance. Based on that understanding, she signed the GRW on June 20, 2024.

The GRW contained a provision — Section IV.2 — that expressly preserved Defendant's right to file charges with the EEOC. Defendant exercised that right. She had been notified of her position elimination upon returning from FMLA leave and filed charges of discrimination with the EEOC.

AT&T responded to Defendant's EEOC charge with a Position Statement dated August 1, 2024. In that document, AT&T told the EEOC something entirely different: that Defendant's termination was "performance-based," that she "ranked last," that her performance was "unsatisfactory." AT&T cited performance documentation, evaluations, and a team ranking. The ranking was a material fact never disclosed to Defendant at the time of her termination or the signing of the GRW.

Defendant saw the contradiction. The document AT&T gave her said one thing. The document AT&T gave the EEOC said the opposite. Both are official AT&T records. Both cannot be true. Defendant does not know which account AT&T would provide to a future employer, which version exists in her personnel file, or which version AT&T would stand behind under oath.

Defendant then did exactly what AT&T's own agreements required her to do. AT&T's Management Arbitration Agreement mandated that employment disputes be resolved through JAMS arbitration. Defendant received her Right to Sue letter from the EEOC and filed her claims in JAMS — the forum AT&T chose.

AT&T's response was to file this federal lawsuit.

**What was Defendant supposed to do differently?**

Her job was selected for elimination while she was on FMLA leave. She used the EEOC rights AT&T's contract said she could use. She filed in the forum AT&T's contract said she must use. As a result of following this provision she learned of a contradiction in AT&T's own official records regarding the true reason for her termination and sought answers. AT&T's position is that she should have seen the contradiction, said nothing, and walked away. That is not a reasonable expectation. It is not what any rational person would do.

This matters beyond this lawsuit. Defendant is a Vice President of Sales & Partner Enablement at a technology company. She is an adjunct marketing professor. She sits on professional boards. Her professional reputation is her livelihood. Right now, AT&T has two contradictory official records about her employment — one says her position was eliminated for business reasons, the other says she was terminated for poor performance. She is entitled to an answer. This Court can provide one.

AT&T has not yet established any right to the relief it seeks. No court has ruled that Defendant breached the GRW. No court has ruled that the GRW is enforceable. No court has determined that any payment was improper. Yet AT&T filed this lawsuit demanding $59,327 before any of those questions were answered — seeking to collect a debt that does not yet exist in law, against a former employee who did nothing more than follow the terms of AT&T's own agreements to seek clarity on confusion AT&T voluntarily created.

For the reasons set forth in Defendant's Answer, Affirmative Defenses, and Counterclaims below, this action should be dismissed, the GRW should be declared void, and AT&T should be held accountable for using this lawsuit as an instrument of retaliation.

## PARTIES, JURISDICTION, AND VENUE

**1.** Admitted that Defendant signed a General Release and Waiver ("GRW") on June 20, 2024, and received a Severance Allowance of $59,327.00. Admitted that Defendant filed an arbitration. Denied that Defendant "violated the terms" of the Plan or GRW. Defendant affirmatively states that the GRW is voidable and unenforceable because it was procured through fraud in the inducement, as AT&T Services materially misrepresented that Defendant's position was being eliminated as part of a non-performance related "reduction in force."

**2.** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding the Plan's status as a "self-funded employee benefit plan" and therefore denies the same.

**3.** Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding AT&T Services, Inc.'s status as "Plan Administrator and named fiduciary" and therefore denies the same.

**4.** Admitted that Defendant resides in the State of Texas. Defendant denies that she resides in Dallas, Texas; Defendant resides in Mansfield, Texas.

**5.** Admitted that Defendant may be found in this judicial district.

**6.** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant admits that this Court has subject matter jurisdiction over claims arising under ERISA.

**7.** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest personal jurisdiction.

**8.** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest venue.

## FACTUAL ALLEGATIONS

**9.** Admitted that Defendant received a Surplus Notification Letter ("SNL") dated May 28, 2024. Admitted that the SNL stated Defendant was being placed in "surplus" status effective May 29, 2024. Denied that Defendant's position was legitimately eliminated as part of a "reduction in workforce." Defendant affirmatively states that AT&T's representation that her position was being eliminated was false and fraudulent, as demonstrated by AT&T's contradictory statements to the EEOC.

**10.** Admitted.

**11.** Admitted that the Plan Document sets forth eligibility requirements. The quoted language speaks for itself.

**12.** Admitted that the Plan Document contains eligibility language. Defendant affirmatively states that the requirement to "properly execute" a GRW presupposes that the GRW was not procured through fraud. A GRW obtained through material misrepresentations is not "properly executed."

**13.** Admitted that the SNL stated Defendant had to acknowledge and agree to the GRW to receive severance benefits.

**14.** Admitted.

**15.** Admitted.

**16.** Admitted that Defendant accessed the Surplus Transition Portal on June 3, 2024, and performed the actions described. The STP activity log speaks for itself.

**17.** Admitted.

**18.** Admitted.

**19.** Admitted that Defendant electronically acknowledged the GRW on June 20, 2024. Defendant affirmatively states that such acknowledgment was induced by AT&T's fraudulent misrepresentations.

**20.** Admitted that the GRW contains the quoted language. The document speaks for itself.

**21.** Admitted that Defendant received a Severance Allowance of $59,327.00 on July 5, 2024.

**22.** Admitted that the GRW contains the quoted release language. The document speaks for itself. Defendant affirmatively states that this release is voidable due to fraud in the inducement.

**23.** Admitted that Defendant filed a Demand for Arbitration with JAMS on July 7, 2025, styled Alexis Cook-Simms v. AT&T Services, Inc., JAMS Ref. No. 5310001506, alleging claims under Title VII, Section 1981, the TCHRA, the ADA, and the FMLA.

**24.** Denied. The GRW is voidable and unenforceable because it was procured through fraud in the inducement. Defendant did not validly release her claims because the release was obtained through AT&T's material misrepresentations.

**25.** Admitted that the Plan Document contains overpayment recovery language. The document speaks for itself. Denied that any "overpayment" occurred because the GRW is voidable due to fraud.

**26.** Denied. Defendant has not violated the terms of the Plan because the GRW upon which Plaintiff relies is voidable and unenforceable due to fraud in the inducement.

**27.** Denied. Defendant's retention of the Severance Allowance is not inequitable because the GRW was procured through fraud, and Defendant is entitled to pursue her claims notwithstanding the fraudulently-induced waiver.

**28.** Admitted that counsel for the Plan Administrator sent correspondence to Defendant's then-counsel on August 25, 2025, and September 19, 2025. The letters speak for themselves. Denied that Defendant violated the terms of the Plan or GRW.

**29.** Admitted that Mr. Kennard retired from the practice of law and no longer represents Defendant. Admitted that Defendant is proceeding pro se. Admitted that undersigned counsel sent correspondence to Defendant on November 10, 2025.

**30.** Admitted that Defendant responded via email on November 15, 2025, declining to voluntarily dismiss the arbitration.

## COUNT I - INJUNCTIVE RELIEF PURSUANT TO SECTION 502(A)(3) OF ERISA

**31.** Defendant incorporates her responses to Paragraphs 1 through 30 as if fully restated herein.

**32.** Denied. Defendant has not violated the terms of the Plan because the GRW is voidable due to fraud in the inducement.

**33.** Denied.

**34.** This paragraph contains legal conclusions and requests for relief to which no response is required. To the extent a response is required, denied.

**35.** Denied.

**36.** Denied. Plaintiff is not entitled to attorneys' fees.

## COUNT II - EQUITABLE RESTITUTION PURSUANT TO SECTION 502(A)(3) OF ERISA

**37.** Defendant incorporates her responses to Paragraphs 1 through 36 as if fully restated herein.

**38.** Denied.

**39.** Denied. Defendant has not been "unjustly enriched" because the GRW was procured through fraud and is voidable.

**40.** Denied.

**41.** Admitted that Defendant received funds. Denied that equitable restitution is appropriate.

**42.** Denied. The Plan Document and GRW are not sufficient to impose a constructive trust or equitable lien because the GRW is voidable due to fraud in the inducement.

**43.** Denied.

**44.** Denied. Plaintiff is not entitled to attorneys' fees.

## COUNT III - DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT

**45.** Defendant incorporates her responses to Paragraphs 1 through 44 as if fully restated herein.

**46.** Admitted that a controversy exists between the parties.

**47.** Admitted that Defendant filed the arbitration asserting claims regarding her employment and termination. Denied that Defendant validly "waived and released" such claims because the GRW is voidable due to fraud in the inducement.

**48.** Denied.

**49.** This paragraph contains legal conclusions and requests for relief to which no response is required. To the extent a response is required, denied.

**50.** Denied.

**51.** Denied.

**RESPONSE TO PRAYER FOR RELIEF**

Defendant denies that Plaintiff is entitled to any of the relief requested in its Prayer for Relief, including but not limited to: judgment on the Complaint; declarations that the GRW is valid and enforceable; orders dismissing Defendant's arbitration claims; imposition of a constructive trust or equitable lien; orders directing Defendant to pay or turn over the Severance Allowance; costs of suit; attorneys' fees; or any other relief.

To the extent any allegation in the Complaint is not specifically addressed above, it is denied.

**AFFIRMATIVE DEFENSES**

Without assuming the burden of proof on any issue for which Defendant would not otherwise have the burden, Defendant asserts the following affirmative defenses:

**<u>FIRST AFFIRMATIVE DEFENSE - Fraud in the Inducement</u>**

AT&T represented to Defendant that her termination was due to "reduction in workforce" and "position elimination" for "business needs." These representations were material to Defendant's decision to sign the GRW. AT&T's subsequent EEOC Position Statement revealed that AT&T considered this a "performance-based termination"—a fact AT&T concealed when obtaining Defendant's signature. Under Texas law, a release procured by fraud is voidable. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 332 (Tex. 2011); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). AT&T cannot enforce a release it obtained through misrepresentation.

AT&T knew its representations were false at the time Defendant signed the GRW. When Defendant's manager placed her on the Performance Commitment Plan, Defendant was concerned that it would block transfers. She expressly communicated to HR that she wanted the right to move to another manager and that she had interviews. She then expressed to HR that if her employment had to end, she wanted a neutral separation. AT&T knew this—and then deliberately presented the termination as a "reduction in workforce" to give Defendant exactly what she had requested, inducing her to sign the GRW. AT&T had already issued the Performance Commitment Plan, already conducted the performance rankings it later cited to the EEOC, and already hired contractor Reneé Nicholson to perform Defendant's work. AT&T knew the "neutral RIF" narrative was false when it made the representation, and AT&T knew Defendant was relying on that representation because Defendant had explicitly asked for a neutral separation.

## SECOND AFFIRMATIVE DEFENSE - No Mutual Assent

Valid contract formation requires mutual assent based on accurate information. Defendant signed the GRW based on AT&T's representation that her termination was a neutral "reduction in force." A "RIF" for business reasons not related to performance preserves professional reputation; a "performance-based" termination brands the employee as a poor performer. These have fundamentally different consequences. No reasonable employee would sign a "neutral separation" agreement if they understood the employer would subsequently characterize them as a poor performer to federal agencies. Because the parties' understanding of the essential nature of the transaction differed, no meeting of the minds occurred.

## THIRD AFFIRMATIVE DEFENSE - Unclean Hands

Plaintiff's claims are barred by the doctrine of unclean hands. Plaintiff, acting through AT&T Services as Plan Administrator, engaged in inequitable conduct by fraudulently inducing Defendant to sign the GRW through material misrepresentations about the reason for her termination. A party that obtains a release through fraud cannot thereafter seek to enforce that release in equity.

## FOURTH AFFIRMATIVE DEFENSE - Failure of Consideration / Plan Ineligibility

If AT&T's "performance-based" representation to the EEOC is true, Defendant was never eligible for severance under the Plan's own terms. The Plan states an employee is "not eligible for designation as a participant" if "the manager's termination is the result of performance related problems." (ADEA Information Notice, Section B.c.) If the termination was performance-based—as AT&T told the EEOC—the GRW is void for lack of consideration. AT&T's inconsistent positions void the agreement under any analysis.

## FIFTH AFFIRMATIVE DEFENSE - Post-Waiver Claims Not Released

The GRW releases only claims "arising or occurring prior to and including" June 20, 2024. Certain claims arose after that date and therefore could not have been released: (a) Defamation—AT&T's false "performance-based" statements to the EEOC occurred after the GRW was executed; (b) Continuing retaliation—filing this lawsuit to punish Defendant for exercising her preserved EEOC rights; (c) Fraud—AT&T's contradictory statements prove at least one is necessarily false. These post-waiver claims are not covered by the release.

## SIXTH AFFIRMATIVE DEFENSE - Equitable Estoppel

Plaintiff is equitably estopped from enforcing the GRW or seeking recovery of the Severance Allowance because AT&T Services made false representations to Defendant regarding the reason for her termination, AT&T intended or expected Defendant to rely on those representations, Defendant reasonably relied on those representations in signing the GRW, and Defendant would be harmed if Plaintiff were permitted to enforce a fraudulently-obtained release.

## SEVENTH AFFIRMATIVE DEFENSE - GRW Preserved EEOC Rights

Section IV.2 of the GRW expressly states: "Nothing in this General Release and Waiver shall interfere with my right to file a charge, cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission (EEOC)." Defendant exercised this preserved right. AT&T's Position Statement—the document exposing AT&T's fraud—was produced in response to Defendant's EEOC charge. AT&T cannot preserve Defendant's EEOC rights, use the EEOC process to reveal its fraud, and then claim Defendant "breached" the GRW.

## EIGHTH AFFIRMATIVE DEFENSE - Release Not Knowing and Voluntary

Under the totality of circumstances, Defendant's execution of the GRW was not knowing and voluntary. AT&T withheld material information when presenting the GRW, including: (a) that AT&T considered the termination "performance-based"; (b) that AT&T had conducted performance rankings during Defendant's FMLA leave; (c) that AT&T utilized a Performance Commitment Plan with deadlines falling entirely during Defendant's protected leave to make the selection decision; (d) that AT&T had already hired a contractor to perform Defendant's work; and (e) that AT&T intended to characterize Defendant as a poor performer to federal agencies. A waiver is not voluntary when the employee is denied information material to the decision to sign.

Had Defendant known AT&T would later claim her termination was performance-based, she would not have signed the GRW.

**NINTH AFFIRMATIVE DEFENSE - Reservation of Additional Defenses**

Defendant reserves the right to assert additional affirmative defenses as discovery proceeds and additional facts become known.

## DEFENDANT'S COUNTERCLAIMS

## AGAINST PLAINTIFF AT&T SEVERANCE PAY PLAN

Defendant/Counter-Claimant Alexis Cook Simms ("Cook-Simms"), appearing pro se, asserts the following counterclaims against Plaintiff/Counter-Defendant AT&T Severance Pay Plan ("the Plan"). These counterclaims arise exclusively from post-waiver conduct occurring after June 20, 2024—the date of the GRW—and are therefore not subject to any release.

## FACTUAL BASIS FOR COUNTERCLAIMS

52. Cook-Simms incorporates by reference her responses to Paragraphs 1 through 51 and her Affirmative Defenses as if fully restated herein.

53. **The GRW Preserved Cook-Simms's EEOC Rights.** Section IV.2 of the GRW states: "Nothing in this General Release and Waiver shall interfere with my right to file a charge, cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission (EEOC)." This provision was required by federal law and was a material term of the GRW.

54. **Cook-Simms Exercised Her Preserved EEOC Rights. On or about June 19, 2024, Cook-Simms filed a Charge of Discrimination with the EEOC and the Texas Workforce Commission (Charge No. 450-2024-08617) alleging race discrimination, disability discrimination, and retaliation following her termination. This charge was filed in the exercise of rights expressly preserved by the GRW.**

55. **AT&T's EEOC Position Statement Exposed the Fraud.** On August 1, 2024—after the GRW was executed—AT&T submitted its Position Statement to the EEOC through Lead EEO Consultant Stephanie Davis. In this post-waiver document, AT&T advanced a "performance-based" rationale for Cook-Simms's termination, citing "unsatisfactory performance," the Performance Commitment Form, and a surplus ranking in which Cook-Simms purportedly "scored the lowest." This directly contradicted the "position eliminated" / "reduction in workforce" rationale AT&T provided in the Surplus Notification Letter, which was the representation that induced Cook-Simms to sign the GRW.

**56. AT&T Also Told the EEOC That Cook-Simms's Position Was "Not Backfilled."** The Position Statement stated that Cook-Simms's "position was not backfilled" and "her work was absorbed by others." Cook-Simms has identified Renée Nicholson, hired under Gordon Shannon during Cook-Simms's FMLA leave to perform go-to-market support for Microsoft—duties previously performed by Cook-Simms. Discovery will establish whether AT&T's "not backfilled" representation to the EEOC was also false.

**57. AT&T's Mandatory Arbitration Agreement Required JAMS.** As a condition of Cook-Simms's employment, AT&T required her to sign a Management Arbitration Agreement mandating that employment disputes be resolved through JAMS arbitration. When Cook-Simms received a Notice of Right to Sue from the EEOC, she brought her employment claims in JAMS—the forum AT&T required.

58. AT&T Filed This Federal Lawsuit to Punish Cook-Simms for Exercising Her Rights. AT&T's counsel sent a demand letter on November 10, 2025, conditioning the avoidance of federal litigation on Cook-Simms's agreement to dismiss her arbitration claims with prejudice and assume all arbitration cost. When Cook-Simms declined on November 15, 2025, AT&T filed this federal lawsuit in the Northern District of Texas seeking recovery of $59,327 in severance, injunctive relief to enjoin the JAMS arbitration, and a declaratory judgment that the GRW is valid and enforceable. AT&T then filed the same claims again as counterclaims in the JAMS arbitration—the very proceeding it is simultaneously asking this Court to enjoin. AT&T is now pursuing the same $59,327 in two forums simultaneously against a pro se former employee. AT&T simultaneously preserved Cook-Simms's EEOC rights, mandated her arbitration forum, sued her in federal court for using both, and then filed duplicative counterclaims in the arbitration it seeks to shut down.

**59. The Internal Contradiction.** AT&T's litigation position is irreconcilable with its own agreements. The GRW preserves Cook-Simms's EEOC rights. The Management Arbitration Agreement requires employment disputes to go to JAMS. Cook-Simms filed an EEOC charge (permitted by the GRW), received a right-to-sue letter, and filed in JAMS (required by the arbitration agreement). AT&T's EEOC response created a genuine employment dispute that warrants clarification. AT&T's position is that Cook-Simms breached the GRW by doing exactly what AT&T's own agreements authorized and required her to do. This position is untenable as a matter of law and constitutes an act of retaliation in substance.

**60.** All of the conduct described in Paragraphs 55 through 59 occurred after June 20, 2024, and therefore postdates the GRW. These counterclaims arise from post-waiver conduct and are not subject to any release.

## COUNTERCLAIM I — DECLARATORY JUDGMENT THAT THE GRW IS VOID

(Against Plaintiff AT&T Severance Pay Plan)

**61.** Cook-Simms incorporates by reference all preceding paragraphs as if fully restated herein.

**62.** Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, this Court has jurisdiction to declare the rights and legal relations of the parties.

**63.** An actual controversy exists between Cook-Simms and the Plan regarding the validity and enforceability of the GRW.

**64.** The GRW was procured through fraud in the inducement. AT&T represented to Cook-Simms that her termination was due to "position elimination" as part of a "reduction in workforce" for "business needs." This representation and wording was material to Cook-Simms's decision to sign the GRW. AT&T's subsequent EEOC Position Statement revealed that AT&T considered Cook-Simms's termination to be "performance-based"—a fact AT&T knew it would list as the true reason for termination if asked and concealed at the time it presented the GRW. Under Texas law, a release procured through fraud in the inducement is voidable. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 332 (Tex. 2011); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990).

**65.** Alternatively, if AT&T's "performance-based" representation to the EEOC is true, Cook-Simms was never eligible for severance under the Plan's own terms, which exclude employees whose termination "is the result of performance related problems." The GRW therefore fails for lack of consideration.

**66.** Cook-Simms seeks a declaratory judgment that the GRW is void and unenforceable, that Cook-Simms is not required to return the Severance Allowance, and that Cook-Simms's employment claims- particularly the claims that have occurred post waiver- are not barred by the GRW.

## COUNTERCLAIM II — POST-WAIVER RETALIATION

(Against Plaintiff AT&T Severance Pay Plan, as Administered by AT&T Services, Inc.)

**67.** Cook-Simms incorporates by reference all preceding paragraphs as if fully restated herein.

**68. Cook-Simms engaged in protected activity.** She filed charges of discrimination with the EEOC, exercised her rights under the FMLA, and filed a Demand for Arbitration in the forum AT&T mandated. Each of these constitutes protected activity under Title VII, 42 U.S.C. § 2000e-3(a); Section 1981, 42 U.S.C. § 1981; and the FMLA, 29 U.S.C. § 2615.

69. AT&T took adverse action. In response to Cook-Simms's protected activity, AT&T took multiple adverse actions: (a) AT&T's counsel sent demand letters threatening federal litigation if Cook-Simms did not dismiss her arbitration with prejudice; (b) when Cook-Simms declined,

AT&T filed this federal lawsuit seeking recovery of $59,327, injunctive relief, and a declaratory judgment extinguishing her employment claims; and (c) AT&T then filed the same severance recovery claims as counterclaims in the JAMS arbitration—the very proceeding AT&T is simultaneously asking this Court to enjoin. AT&T is now pursuing identical relief against Cook-Simms in two forums at the same time. The duplicative filing serves no legitimate purpose; its only function is to maximize the litigation burden on a pro se former employee and coerce the abandonment of her claims.

**70. The adverse action would deter a reasonable employee.** Under the standard established in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), retaliation includes any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Filing a federal lawsuit to recover severance plus external legal fees from a former employee – currently representing themselves pro se while working full time as a VP and an adjunct professor - who exercised her expressly preserved EEOC rights and used her employer's mandated arbitration forum to find a resolution would dissuade a reasonable employee from engaging in protected activity. AT&T's message is clear: if you file an EEOC charge and pursue your claims, we will sue you.

**71. Temporal proximity and causal connection.** The demand letters and this lawsuit followed directly from Cook-Simms's JAMS arbitration filing on July 7, 2025. The lawsuit followed after Cook-Simms refused to capitulate. The causal connection between the protected activity and the adverse action is direct and undisputed—AT&T's Complaint identifies the JAMS arbitration as the specific basis for its claims.

**72. No "Overpayment" Has Been Adjudicated.** Plaintiff characterizes the Severance Allowance as an "overpayment" recoverable under the Plan. But no court has ruled that Cook-Simms breached the GRW, that the GRW is enforceable, or that any payment was improper. AT&T filed this lawsuit to recover funds before any breach was adjudicated—seeking to collect a debt that does not yet exist in law. A legitimate overpayment recovery action follows a determination that the payment was improper. AT&T skipped that step entirely. The decision to file suit demanding return of funds before establishing any legal right to recovery supports the inference that the purpose of this lawsuit is not contract enforcement but deterrence of Cook-Simms's protected activity.

73. This conduct is entirely post-waiver. The demand letters and the filing of this lawsuit all occurred after June 20, 2024. These claims are not subject to any release in the GRW.

74. The pattern of retaliation is continuous. This lawsuit is not an isolated act but the latest in a chain of retaliatory conduct that began with Cook-Simms's pay equity complaint in late 2023 and escalated through a retaliatory performance evaluation, a procedurally deficient PCF, the blocking of internal transfers, termination on the day of return from FMLA leave, a false EEOC Position Statement, demand letters threatening litigation, and now this federal lawsuit. Each

successive act was designed to deter Cook-Simms from exercising her rights, and each successive act confirms the retaliatory intent behind the prior ones.

75. As a direct and proximate result of the Plan's retaliatory conduct, Cook-Simms has suffered damages, including but not limited to: the cost and burden of defending this lawsuit while proceeding pro se; emotional distress, anxiety, and mental anguish caused by being sued by her former employer for exercising her legal rights; the chilling effect on her ability to pursue legitimate employment claims; and the diversion of time and resources from her professional and personal life.

76. The Plan's conduct was willful, malicious, and undertaken in reckless disregard of Cook-Simms's federally protected rights, entitling Cook-Simms to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counter-Claimant Alexis Cook Simms respectfully requests that this Court:

**On the Complaint:**

a.  Deny all relief requested by Plaintiff;

b.  Dismiss the Complaint with prejudice;

**On Counterclaim I (Declaratory Judgment):**

c.  Enter a declaratory judgment that the GRW is void and unenforceable due to fraud in the inducement;

d.  Enter a declaratory judgment that Cook-Simms is not required to return the Severance Allowance;

e.  Enter a declaratory judgment that Cook-Simms's employment claims are not barred by the GRW and may proceed in JAMS arbitration;

f.  In the alternative, if rescission requires return of the Severance Allowance, permit Cook-Simms to return said funds and proceed with all employment claims;

**On Counterclaim II (Post-Waiver Retaliation):**

g.  Award Cook-Simms compensatory damages for emotional distress, mental anguish, and the cost and burden of defending this retaliatory lawsuit

h.  Award Cook-Simms punitive damages for the Plan's willful and malicious retaliation;

i.  Enter an injunction barring enforcement of the GRW and barring any further retaliatory litigation or threats related to Cook-Simms's exercise of her EEOC or arbitration rights;

**General Relief:**

j.  Award Cook-Simms reasonable costs and attorneys' fees (or pro se equivalent) pursuant to ERISA § 502(g)(1), Title VII, Section 1981, and the FMLA;

k.  Award pre-judgment and post-judgment interest at the maximum rate allowed by law;

l.  Grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted this 9th day of February, 2026,

_____

Alexis Cook-Simms, Pro Se
3021 St George Dr
Mansfield, TX 76063
404-719-1778
alexisa.cook@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of February, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system upon:

Craig A. McDougal
John D. Robinson
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
cmcdougal@ktslaw.com
jdrobinson@ktslaw.com

_____

Alexis Cook-Simms, Pro Se